UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
F I L E D
APR 1 9 2019
AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 19-CR-03-DLB

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

TRI-STATE LAWN CARE, INC.     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the Information, charging eight violations of 18 U.S.C. § 1546(a), that is, false statements in connection with immigration documents. The Defendant will also agree to restitution, a money judgment in lieu of forfeiture of the agreed upon assets listed in the Forfeiture Allegation, a civil penalty and a fine.

2. The essential elements are:

    (a) First, that the Defendant knowingly made a false statement on an application required by the immigration laws of the United States;

    (b) Second, that the statement made was material;

    (c) Third, that the statement was made as permitted under the penalty of perjury.

3. As to the charges, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

Michael Anthony Wheeler is the President and sole owner of Tri-State Lawn Care, Inc. (Tri-State), Flatwoods Kentucky. Tri-State is incorporated and licensed to do business in Kentucky. Tri-State was issued 9 visas in 2009, 10 visas in 2010, 10 visas in 2011, 12 visas in 2012, 12 visas in 2013, 11 visas in 2014, 12 visas in 2015, 8 visas in 2016 and 10 visas in 2017 to hire H2-A temporary agricultural workers The H2-A agricultural workers program does not have a statutory numerical limit or cap on the number of visas issued in a given year; however, the H2-B non-agricultural workers program has a statutory limit of $66,000 per year. Tri-State represented under penalty of perjury on the required visa paperwork submitted to the Department of Labor (DOL) and the Department of Homeland Security (DHS) (ETA 9142 forms and I-129 forms) that the workers would be engaged in agricultural work when Tri-State knew the workers would not be engaged in agricultural work. Tri-State further represented that the workers would be paid prevailing wages and would not be charged any fees including fees for travel to and from the Dominican Republic, housing or use of Tri-State work trucks. Tri-State utilized the workers for lawn care work and construction work, not agricultural work. Further, Tri-State did not pay the workers prevailing wages, but rather charged H2-A workers fees for airfare to and from their home country and charged workers fees for housing and transportation to and from the assigned job sites. During the investigation,

2

several workers were interviewed by federal agents and advised that they were required to pay rent, airfare and fees to use Tri-State work trucks. Based upon the investigation, it was determined by the Department of Labor, Wage and Hour Division, that during the above referenced time period Tri-State failed to pay prevailing wages and charged prohibited fees for travel, rent and use of work vehicles in the amount of $174,704.91.

4. Pursuant to 18 U.S.C. § 3571(c)(3) [3561(a)], the statutory punishment is a fine of not more than $500,000, or both, and a term of probation of not more than 5 years. Pursuant to 18 U.S.C. § 3013(a)(2)(B), a mandatory special assessment of $400 per count applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to other calculations. This recommendation does not bind the Court. The United States and the Defendant reserve the right to object to, remain neutral on, or agree with any and all guideline computations that are different.

United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, 8manual, will determine the Defendant's guideline range.

    (a)    Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct consists of the actions described in Paragraph 3 of this document.

    (b)    The parties agree that U.S.S.G. Chapter 8, Part C, Subpart 2 applies because the Defendant does not qualify for treatment as a company with a primary criminal purpose under§ 8C1.1.

  (c) Pursuant to U.S.S.G. § 8C2.2(b), the parties agree that the Defendant cannot and is not likely to become able (even on an installment schedule) to pay the minimum guideline fine (approximately $450,000) generated through the operation of §§8C2.3 through 8C2.7. Therefore, again pursuant to § 8C2.2(b), the parties agree that the Court may make a preliminary fine range determination, dispense with the formalities of further calculation, and instead impose a fine under § 8C3.3. In this instance, the parties specifically agree that a fine of $ 25,000 represents a guideline fine reduction that is not more than necessary to avoid substantially jeopardizing the continued viability of the organization and that will not impair Tri-State's ability to make restitution to the victims.

  (d) (d) The parties further agree that the disgorgement mechanisms of §8C2.9 are unnecessary in light of the substantial forfeiture and other financial aspects of this plea and the related individual Wheeler's expected guilty plea.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea, conviction and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to pay restitution in the amount of $174,704.91 at the time of sentencing in this matter for prevailing wage shortfalls and fees charged for airfare, housing and use of the Defendant's work trucks.

9. Pursuant to the Forfeiture Allegation, the Defendant agrees to a Money Judgment of $75,000 in lieu of forfeiture of 3105 Indian Run Road, Flatwoods, Kentucky, and a 2011 Dodge Ram 4500 4x4 landscape dump truck, VIN number

3D6WU6EL4BG602445, and will pay this amount in full at the time of sentencing in this matter.

10.     Pursuant to 8 U.S.C. § 1188(g)(2) and 29 C.F.R. 501.16, the Defendant agrees to pay to the Wage and Hour Division, Department of Labor, a civil penalty in the amount of $25,000.

11.     The Defendant and the United States recommend that the sum of $25,000.00 is the appropriate fine. The Defendant agrees that should it fail to make this payment at the time of sentencing in this matter, it shall immediately be responsible for the full $500,000.00 statutory fine amount.

12.     The Defendant, its agents, servants, and those in active concert with it, including Michael Anthony Wheeler, President, agree to consent to debarment from the H-2A program for a period of ten (10) years. The standard period and procedures set forth in 20 C.F.R § 655.182 are not applicable given the Defendant's consent and agreements herein. Thus, the Administrator of the Office of Foreign Labor Certification is not required to go through its debarment procedures in order to effectuate the debarment and comply with the terms of an Enhanced Compliance Program as set forth in Addendum A to this Plea Agreement. If however, workers who perform landscaping or lawn care services only are permitted to be employed via the H-2A program at some point in the future, the Defendant is not prevented by this agreement from applying for or being approved via the H-2A program to employ such workers.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office.

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges **and the Addendum**.

16. This document ~~and~~ the plea supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 4/19/19    BY: _____
Hydee R. Hawkins
Assistant United States Attorney

Date: 4-19-19    _____
Tri-State Lawn Care, Inc. Defendant
By: Michael Anthony Wheeler, President and Sole Owner

Date: 4/19/19    _____
Scott White
Attorney for Defendant

7

## ADDENDUM A TO PLEA AGREEMENT

A. **Monitoring by a Neutral Third Party**

1. Within 30 days of the effective date of the Plea Agreement, Tri-State Lawn Care, Inc. and Michael Wheeler (hereinafter referred to collectively as "Tri-State") will communicate to the Wage and Hour Division of the U.S. Department of Labor ("WHD") the name and qualification of a neutral monitor ("the Monitor"). The Monitor must demonstrate to WHD's satisfaction his/her ability to assess H-2B compliance and provide an unbiased assessment of Tri-State's compliance.

2. Within 14 days of receipt by Tri-State of WHD's written acceptance of any proposed monitor, Tri-State will retain the Monitor deemed acceptable by WHD. Tri-State will provide WHD with a copy of the agreement between Tri-State and the Monitor within 5 business days of its execution. The Monitor will be compensated by Tri-State.

3. For a period of five years after the effective date of the Plea Agreement, the Monitor will review, on a semi-annual basis, Tri-State's operations in order to assess Tri-State's compliance with the requirements of the H-2B program and any applicable requirements of the Immigration and Nationality Act ("INA"). The first review shall occur when 30% of the relevant contract period has elapsed. The second review shall occur when 70% of the contract period has elapsed. The relevant contract period shall be the period of intended employment as defined in the Applications for Temporary Employment Certification, Employment Training Administration ("ETA") Form 9142B, submitted by Tri-State or any agents thereof.

4.  The Monitor will review Tri-State's compliance with the requirements of the H-2B program, including but not limited to compliance with 20 C.F.R. § 655, Subpart A; 29 C.F.R. § 503.16; the employer certifications on Form ETA 9142B, Appendix B; and any applicable requirements of the INA.

5.  Among other appropriate activities, the Monitor will review pay and time records, recruiting materials, applications for prevailing wage determinations, applications for temporary employment certifications, applications for H-2B visas, notifications of separation to the ETA and the United States Citizenship and Immigration Services, applications for employment, recruitment records and reports, and records of hiring and separation. The Monitor shall also review records relating to corresponding workers and workers hired in response to recruitment efforts.

6.  The Monitor will also conduct interviews with H-2B and U.S. workers to assess compliance with the requirements of the INA. Tri-State agrees to make its employees available for interview purposes; it agrees that such interviews will be kept confidential from the company and that it will not retaliate against any employee for information given to the Monitor or to WHD. At Tri-State's expense, the Monitor shall have reasonable access to interpreters necessary to conduct such confidential interviews.

7.  Within 14 days of completion of each review, the Monitor will submit a written report to WHD (c/o Karen Garnett, District Director, U.S. Department of Labor, Wage & Hour Division, Romano Mazzoli Federal Building, 600 Dr. Martin Luther King Jr. Place, Room 352, Louisville, Kentucky 40202). Based on these reports, WHD may request additional information. The reviews conducted by the Monitor will not limit WHD's authority to investigate Tri-State at any time during the term of the Enhanced

Compliance Program; nor will it limit ETA's separate authority to conduct audit examinations of any H-2B applications that are in effect, pending or certified during the term of the Enhanced Compliance Program. The results of the Monitor's reports will not have any effect on the authority of WHD or ETA to independently determine whether Tri-State is in compliance with applicable law.

8. Nothing in this Enhanced Compliance Program preempts WHD's authority to conduct unannounced inspections of Tri-State at any time, at the agency's discretion.

B. **No Rights or Estoppel Created**

1. Nothing in the Monitor's activities identified in this Program, the failure of the Monitor to find violations, or WHD's failure to act on any information that is brought to its attention by the Monitor or as a result of any compliance activities required by this Program, shall constitute estoppel or in any way waive the WHD's and ETA's right to conduct investigations pursuant to applicable law, or to seek appropriate enforcement action and remedies with respect to any violations disclosed by such investigations.

2. This Enhanced Compliance Program does not relieve Tri-State of any obligation under applicable law which may currently exist or come into existence during the term of the Program.

C. **Additional Assurances and Obligations**

1. Tri-State agrees to comply with all applicable laws and regulations, including but not limited to the Fair Labor Standards Act of 1938.

2. Tri-State's failure to comply with the employer declarations listed in ETA Form 9142B, Appendix B; 20 C.F.R. § 655, Subpart A; 29 C.F.R. § 503.16; or any applicable requirement of the INA, may result in additional sanctions, including but not limited to: the computation of unpaid wages, the assessment of civil money penalties, and/or certificate revocation and debarment from the H-2B program. If the WHD finds that Tri-State commits a violation warranting debarment, as contemplated by 29 C.F.R. § 503.24, WHD will issue a Notice of Debarment. The Notice of Debarment will state the reason for the debarment finding, including a detailed explanation of the grounds for and the duration of the debarment. During the program term (see Part A above), Tri-State waives all rebuttal and appeal rights available under 29 C.F.R. § 503.43 and 20 C.F.R. § 655.73.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 4\19\19   BY:   _____
                      Hydee R. Hawkins
                      Assistant United States Attorney

Date: 4-19-19         _____
                      Tri-State Lawn Care, Inc.
                      Defendant
                      By: Michael Anthony Wheeler, President
                      and Sole Owner

Date: 4.19.19         _____
                      Scott White
                      Attorney for Defendant

4